UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VALLEY NATIONAL BANK f/k/a
USAmeribank,

    Appellant,

      v.                                      Case No: 8:20-cv-1777-KKM
                                        Bankruptcy No: 8:16-bk-08167-MGW

JEFFREY W. WARREN, as Liquidating
Trustee for Westport Holdings Tampa,
Limited Partnership and Westport
Holdings Tampa II, Limited Partnership,

    Appellee.
_____/

## ORDER

Appellant Valley National Bank appeals from a Final Order Granting Liquidating Trustee's Expedited Motion for Authority to Enter Into Litigation Funding Agreement with A/Z Property Partners LLC. (Doc. 1). After consideration of the bankruptcy court's order and the parties' initial and supplemental briefs, the Court concludes that Valley National lacks standing to challenge the bankruptcy court's order under Article III of the U.S. Constitution. Valley National additionally fails to satisfy the "person aggrieved" test required by precedent. Accordingly, the appeal is dismissed.

**I.**     **BACKGROUND**

On September 22, 2016, Westport Holdings Tampa, Limited Partnership

(Westport I) and Westport Holdings Tampa II, Limited Partnership (Westport II) (collectively Debtors) filed voluntary Chapter 11 petitions. (Doc. 9-7 at 1–2). Debtors hold a Certificate of Authority from the Florida Office of Insurance Regulation (OIR) to operate a continuing care retirement community known as "University Village." *Id.* The bankruptcy court appointed Jeffrey Warren as the Liquidating Trustee, who in turn entered into an agreement to sell most of Debtors' assets to another corporation. OIR approved the sale as long as it occurred within sixty days, but the estate lacked funds to consummate this deal. *Id.* at 3.

Separately, during the bankruptcy proceedings, the Liquidating Trustee filed adversary claims against Valley National based on an allegedly fraudulent transfer. *Id.* at 4. Specifically, the Liquidating Trustee asserted claims against Valley National, as a successor by merger to USAmeriBank, for "aiding and abetting [a] breach of fiduciary duty and the avoidance and recovery of the fraudulent transfer of $3,000,000 of [Westport I's] statutorily required minimum liquid reserves in connection with loans made to Westport Nursing Tampa, LLC." (Doc. 9-7 at 2). The Liquidating Trustee commenced the adversary suit in January 2020, six months prior to the submission of the litigation financing agreement at the heart of the instant dispute. (Doc. 9-7).

Both parties agree that the Liquidating Trustee attempted to sell the claims against Valley National at some point. (Doc. 20 at 4; Doc. 18 at 3–4). Valley National maintains that the principal of the prospective buyer, Richard Ackerman, threatened to obtain the causes of action against Valley National and engage in prolonged litigation if

2

Valley National did not drop an administrative challenge with OIR. (Doc. 18 at 3; Doc. 27 at 2, 4). The sale of the claims against Valley National fell through, and the Liquidating Trustee proceeded to enter into a litigation funding agreement with A/Z Partners, a company newly formed by the same Richard Ackerman, that would finance the closing costs of the sale of Debtors' assets and the adversary proceeding against Valley National. (Doc. 20. at 4; Doc. 18 at 4).

The parties' points of view diverge regarding the strictures of the funding agreement. Valley National emphasizes that the agreement requires the Liquidating Trustee to consult A/Z Partners before changing counsel, share privileged information with A/Z Partners, and "not respond to any settlement offer until giving [g]ood faith consideration to [A/Z Partners'] analysis of the offer." (Doc. 18 at 5). For his part, the Liquidating Trustee contends that he "retained ultimate decision-making authority at all times." (Doc. 20 at 5.) At oral argument, the parties explained that the proposed agreement and the effectuated agreement contained slightly different terms, but ultimately Valley National conceded that the governing agreement—at least per its text—provides the Liquidating Trustee the final say so. *See* (Doc. 21 at 8).

The Liquidating Trustee requested the bankruptcy court approve the litigation funding agreement under 11 U.S.C. §§ 364(c)(1), (c)(2), and (d)(2).[1] (Doc. 1 at 4–5). Valley National objected to approval of the funding agreement, arguing that "there are

---

[1] Subsections 364(c)(1), (c)(2), and (d)(2) provide for a trustee to secure credit with authorization of the bankruptcy court.

3

some strings attached" wherein the "financial interests" of A/Z Partners could impair the good faith effort of the Liquidating Trustee to negotiate with Valley National. *Id.*; (Doc. 19-2 at 1196–97). The bankruptcy court approved the agreement on July 17, 2020, finding that the agreement best served the Debtors, creditors, and other parties and that it is "neither champertous nor usurious." (Doc 1 at 4, 8). Valley National filed a timely notice of appeal on July 31, 2020. (Doc 1).

On appeal, Valley National argues that the funding agreement is champertous under Florida law because the funder is, allegedly, not passively investing but instead intermeddling in the prosecution of the claims. *See* (Doc 18 at 10). The Liquidating Trustee responds by arguing, first, that Valley National lacks standing under the Bankruptcy Code. (Doc. 20 at 7). Next, he argues that the challenge is statutorily barred by 11 U.S.C. § 364(e)[2] because Valley National failed to obtain a stay after the bankruptcy court's initial ruling. (Doc. 20 at 14). And finally, he argues that the agreement is not in fact champertous under Florida law because "[a]ll that remains of champerty [under Florida law] is an affirmative defense to contract claims," *id.* at 17, and there is no evidence of the "extreme circumstances" necessary to invalidate a contract on grounds that are neither constitutional nor statutory, *id.* at 18–19.

The Court ordered supplemental briefing because neither party addressed

---

[2] The Bankruptcy Code provides: "The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt . . . does not affect the validity of any debt so incurred . . . unless such authorization and the incurring of such debt . . . were stayed pending appeal." 11 U.S.C. § 364(e).

4

whether Valley National has Article III standing to appeal the bankruptcy court's order. (Doc. 25). In response, Valley National argues that it has Article III standing because the funding agreement causes an injury in fact by allowing a nonparty to exert control over the adversary proceeding, influence settlement, and prolong litigation. This influence, Valley National contends, affects the integrity and fairness of the bankruptcy proceeding and creates standing to appeal the bankruptcy court's final order blessing the funding agreement. The Liquidating Trustee argues that Valley National does not have Article III standing to appeal the order because Valley National has not shown a concrete injury. (Doc. 18 at 5–6). Further, the Liquidating Trustee argues that the injury alleged is speculative with no imminent risk of harm because it depends on a tenuous chain of events that is not likely to materialize. *Id.*

## II.     ANALYSIS

To appeal a bankruptcy court's final order, a party must have both Article III standing and standing to appeal under the Bankruptcy Code. *In re Bay Circle Props., LLC*, 955 F.3d 874, 877–78 (11th Cir. 2020); *In re Cap. Contracting Co.*, 924 F.3d 890, 897 (6th Cir. 2019) ("[P]arties must at least satisfy Article III rules in appeals to Article III courts."). The Court must satisfy itself of Article III standing, a question of subject matter jurisdiction, before it may address the question of whether a party may appeal under the Bankruptcy Code. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Because Valley National has established neither, the appeal is dismissed, and the Court has no authority to address the merits of the underlying bankruptcy order

5

approving the third-party litigation financing agreement.

### A. Article III Standing

Article III, § 1, of the Constitution vests federal courts with "[t]he judicial Power of the United States," which extends only to "cases" and "controversies." To be sure, "no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotations omitted). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy," which limits the jurisdiction of federal courts to actions in which a litigant seeks redress for a legal injury. *Id.* "To satisfy the 'irreducible constitutional minimum' of Article III standing, a plaintiff must . . . establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct [and] seek (3) a remedy that is likely to redress that injury." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021) (quoting *Spokeo*, 136 S. Ct. at 1547). For appeals, the injury must stem from the judgment rather than an injury caused by the underlying facts. *See Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353–54 (11th Cir. 2003) ("Only a litigant who is aggrieved by [a] judgment or order may appeal." (quoting *Knight v. Alabama*, 14 F.3d 1534, 1556 (11th Cir. 1994) (quotation omitted))); *In re Cap. Contracting Co.*, 924 F.3d at 897. The party seeking relief bears the burden to establish standing at every stage of the litigation. *Spokeo*, 136 S. Ct. at 1547.[3]

---

[3] The Court need not determine whether Valley National must satisfy Article III standing in bankruptcy court. *See In re Cap. Contracting Co.*, 924 F.3d at 897.

Valley National stumbles at the first requirement of standing, injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* Further, "[a]llegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158–59 (1990) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Valley National does not allege a *concrete* injury resulting from the bankruptcy court's order approving of the third-party litigation financing agreement. As an initial matter, it does not allege a financial harm caused by the approval of the agreement. *See In re Cap. Contracting*, 924 F.3d at 897–98 (finding no Article III standing to appeal a bankruptcy court's overruling of an objection to trustee's final report where the alleged defect "could not *financially* harm" the appellant); *In re GT Auto. Grp., Inc.*, 828 F.3d 602, 604 (7th Cir. 2016) ("In the bankruptcy context we have said that an appellant lacks standing if it is unable to realize any economic benefit from a potential reversal." (quotation omitted)). Nor can Valley National identify any actual injury—whether in the form of a rejected settlement offer or excessive litigation tactics—that the bankruptcy court's order produced. When pressed at oral argument, the only harm Valley National articulated was that the litigation funding agreement created an unfair

process allowing A/Z Partners to interfere with the litigation and potentially prevent a speedy settlement.⁴ (Doc. 31). But the existence of the litigation funding agreement does not in any way transform or alter Valley National's legal rights or impose additional costs on it in the adversary proceeding, which is its only connection to the challenged bankruptcy order here. Appellant thus cannot show a concrete injury resulting from the bankruptcy court's order authorizing the funding agreement. *See Wolff*, 351 F.3d at 1354 (concluding that official liquidators, settlement administrator, and court-appointed receiver of class action lacked standing to appeal attorney fees award because the award did not affect parties' reimbursement under the settlement agreement).

In the absence of pecuniary or other tangible harm, Valley National relies on the allegedly unfair process created by the bankruptcy court's order permitting a trustee to divide his loyalty between creditors and a third-party financer. While true that a trustee owes a fiduciary duty to the creditors and shareholders of an estate, adversary defendants (like Valley National) are owed no such duty simply by virtue of being sued by a debtor's estate. *See* 5 Norton Bankr. L. & Prac. 3d § 99.15 (3d ed. 2021) ("As the estate's representative, the trustee owes a fiduciary duty to the estate's creditors and shareholders, but generally not to the debtor or debtor's principals except to the extent that these individuals are creditors of the estate." (footnote omitted)). Without a duty

---

⁴ Notably, Valley National does not assert that the adversary proceeding would not exist but for the litigation financing agreement. Nor does the record reflect that point given that the adversary proceedings predate the existence of the agreement. (Doc. 9-7).

owed, Valley National finds itself without an injury. And worse, Valley National concedes that the text of the funding agreement here assigns ultimate decisionmaking authority to the Liquidating Trustee, so he has not delegated away his fiduciary responsibilities in any event.[5]

At bottom, Valley National complains of the specter of Mr. Ackerman's influence through A/Z Partners over the Liquidating Trustee's negotiations and prosecution in the adversary proceeding. But any harm wielded by Ackerman through A/Z and eventually effectuated by the Liquidating Trustee is far too speculative to confer standing now. A threatened risk of injury is not imminent if it is based on a "chain of contingencies" that relies on speculation and assumptions to come to fruition. *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 410–11 (2013). Valley National's rights, to the extent they are legally recognizable rights, could be affected perhaps if it made a settlement offer in the adversary proceeding, the offer was such that the Trustee would accept the offer, but A/Z Partners and the Liquidating Trustee then rejected the offer solely because of A/Z Partners' opposition. But at this point in time—without evidence of rejected settlement offers or increased litigation expenses due to A/Z Partners' influence[6]—the harm is simply too conjectural and fails to establish standing to

---

[5] That is not to say a trustee could never violate his duties under a similar arrangement, merely that the Court need not determine whether a *creditor* would have Article III standing to appeal in an analogous circumstance.

[6] While Valley does argue that the funding agreement might "prolong litigation," it does not assert any tangible increase in litigation costs that might result from the litigation funding agreement or that the agreement has caused extended litigation. (Doc. 27 at 5). Even then, those additional costs might be too speculative to confer standing.

challenge the bankruptcy court's approval of the litigation funding agreement. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 495–96 (2009).

To be sure, not all intangible harms fail to satisfy the concreteness aspect of injury in fact. *Spokeo*, 136 S. Ct. at 1549 (citing *Clapper*, 568 U.S. 398). But those sufficient harms ordinarily arise in the context of prosecuting private rights, where the common law "presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded." *Id.* at 1551 (Thomas, J., concurring) (providing examples such as property and contract rights). "For example, the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure," such as libel and slander per se. *Id.* at 1549 (majority op.). Here, Valley National purports to vindicate the public harm of an unfair bankruptcy proceeding.[7] Because it does not prosecute a private right, Valley National must assert a tangible risk of harm to satisfy the showing of a *concrete* and *imminent* harm suffered by the invasion of a legally protected interest.

Consequently, without a tangible way that the alleged bias changes Valley National's rights or causes it harm in the adversary proceeding, its objections are akin

---

[7] Indeed, in Florida, champerty appears to be only an affirmative defense, and thus not available as a claim for a violation of a private right. *See Hardick v. Homol*, 765 So. 2d 1107, 1110 (Fla. 5th DCA 2001) ("A survey of Florida case law reveals that the vast majority of Florida cases discussing champerty and maintenance recognize them only as affirmative defenses."). As a result, Valley National likely cannot satisfy the injury in fact requirement of an "invasion of a legally protected interest" to establish Article III standing. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, No. 19-14434, 2021 WL 1556069, at *2 (11th Cir. Apr. 21, 2021) (quoting *Lujan*, 504 U.S. at 560).

to generalized grievances of taxpayers seeking faithful administration of laws without alleging any measurable harm. *See Lujan*, 504 U.S. at 573–74 ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."). Valley National "may not assert merely the 'vindication of the rule of law' as its basis for harm without alleging an actual injury from the purported violation." *In re Cap. Contracting*, 924 F.3d at 898 (quoting *Steel Co.*, 523 U.S. at 106). But that is exactly what it seeks: an unconflicted Liquidating Trustee in the adversary proceeding before the bankruptcy court.

Because Valley National has not alleged a harm that is concrete or imminent, it has not shown that is has Article III standing to bring this appeal, and the Court is obliged to dismiss the case before addressing the merits.

### B. "Persons Aggrieved" Standing

Even if Valley National had demonstrated Article III standing, it has not shown standing to appeal under the Bankruptcy Code. "[T]he Bankruptcy Reform Act of 1978 . . . does not define who has standing to appeal an order of a bankruptcy court." *In re Westwood Cmty. Two Ass'n, Inc.*, 293 F.3d 1332, 1334 (11th Cir. 2002). But like "every circuit court to consider the issue," the Eleventh Circuit has "adopt[ed]" the "definition set forth in the prior law, the Bankruptcy Act of 1898"—a rule "commonly known as

11

the 'person aggrieved' doctrine." *Id.* at 1334–35 & n.3.

One reasonably questions why the "person aggrieved" standard remains despite the Bankruptcy Reform Act of 1978 ostensibly repealing it. The first case to keep the requirement after the significant revision of the Bankruptcy Code put it this way: "The Bankruptcy Act's limitation of the right to appeal to a 'person aggrieved' has not been incorporated in the Bankruptcy Reform Act of 1978. In fact, there is no indication in the Code as to the requisites for standing to appeal. However, there is no basis to conclude that Congress intended to alter the right to appellate review." *In re Goodwin's Discount Furniture, Inc.*, 16 B.R. 885, 888 (1st Cir. Bankr. 1982). This conclusion, of course, ignores that Congress excised the standard from the statute authorizing appeals to district courts, *see* 28 U.S.C. § 158(a), and fails to adequately contend with the fact that it no longer exists as part of the text in federal law. *See* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 256–60 (2012) ("If the legislature amends or reenacts a provision other than by way of a consolidating statute or restyling project, a significant change in language is presumed to entail a change in meaning.").[8] The conclusion seems even more fraught considering the comprehensive scheme created under the Bankruptcy Code. *Cf. Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) ("The assumption of inadvertent omission is rendered especially suspect

---

[8] "[W]hatever the reason [for omitting 'person aggrieved'], the omission appears deliberate. No other explanation seems plausible in view of the detailed character of the remainder of the new law." Richard B. Levin, *Bankruptcy Appeals*, 58 N.C. L. Rev. 967, 976 (1980).

12

upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute.'" (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 (1980))).

Despite the "person aggrieved" language's removal from the statutory text, the Circuit Courts widely adopted this interpretation of the Bankruptcy Reform Act of 1978 as a "matter of judge-made law." *Gen. Elec. Credit Corp. v. L.T. Ruth Coal Co. (In re L.T. Ruth Coal Co.)*, No. 85-5990, 1986 WL 17769, at *2 (6th Cir. Sept. 17, 1986); *Matter of Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983) (citing *In re Goodwin's Discount Furniture*, 16 B.R. at 888)); *see also, e.g.*, *In re El San Juan Hotel*, 809 F.2d 151, 153 (1st Cir. 1987) (We . . . adopt the appellate standing rule of the Ninth Circuit . . . ."); *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 513 (2d Cir. 1985); *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993); *In re Urban Broad. Corp.*, 401 F.3d 236, 243 (4th Cir. 2005) (applying test); *In re Coho Energy Inc.*, 395 F.3d 198, 202 (5th Cir. 2004) ("Notwithstanding its repeal, courts subsequently have found that this test continues to govern standing."); *Matter of DuPage Boiler Works, Inc.*, 965 F.2d 296, 297 (7th Cir. 1992) (applying test and citing *Fondiller*); *In re O & S Trucking, Inc.*, 811 F.3d 1020, 1023 (8th Cir. 2016) ("Although the modern Bankruptcy Code does not articulate a standard for appellate standing, our circuit consistently has applied a "person aggrieved" standard derived from the Bankruptcy Act of 1898."); *Holmes v. Silver Wings Aviation, Inc.*, 881 F.2d 939, 940 (10th Cir. 1989); *Greater Se. Cmty. Hosp. Found., Inc. v. Potter*, 586 F.3d 1, 5 & n.6 (D.C. Cir. 2009) ("Although the provision has been repealed, circuit courts have continued to apply its

13

limitation."). The contention that there is no evidence that Congress intended to alter the "person aggrieved" standard made its way to the Eleventh Circuit's canon in much the same way in 2002. *See In re Westwood Cmty.*, 293 F.3d at 1334 ("[N]o evidence exists that Congress intended to alter the definition set forth in prior law.").

For many years, courts referred to the "person aggrieved" doctrine as a prudential "standing" requirement in bankruptcy appeals. That persisted until the sea change created by *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). There, the Supreme Court explained that referring to a similar doctrine under a different statute as "standing" is a "misnomer" because the actual inquiry under the doctrine is not whether courts have jurisdiction but whether the plaintiff has a cause of action. *Id.* at 127–28. In response, the Eleventh Circuit clarified that the "person aggrieved" standard for bankruptcy appeals "does not speak to a court's subject-matter jurisdiction." *In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1325 n.3 (11th Cir. 2014). Instead, the "person aggrieved" test asks "a statutory-interpretation question: Does the specific statute give the specific plaintiff a right to bring the specific suit?" *In re Cap. Contracting Co.*, 924 F.3d at 896 (citing *Lexmark*, 572 U.S. at 128).

The "person aggrieved" test for statutory standing "restricts standing more than Article III standing, as it allows a person to appeal only when they are 'directly and adversely affected pecuniarily by the order.'" *In re Westwood Cmty.*, 293 F.3d at 1335 (quoting *In re Troutman Ent.*, 286 F.3d 359, 364 (6th Cir. 2002)). The "person aggrieved" doctrine limits a party's right to appeal a bankruptcy court order only if the party has a

financial stake in the order being appealed. *Id.* (citations omitted). "An order will directly, adversely, and pecuniarily affect a person," and satisfy the "person aggrieved" test, "if that order diminishes their property, increases their burdens, or impairs their rights." *Id.* at 1338. Further, "for a person to be aggrieved, the interest they seek to vindicate on appeal must be one that is protected or regulated by the Bankruptcy Code." *In re Ernie Haire Ford*, 764 F.3d at 1326.

Given this two-part test, "[g]enerally, only the bankruptcy trustee may appeal an order from a bankruptcy court," *In re Westwood Cmty.*, 293 F.3d at 1334. But like many rules, the Eleventh Circuit has recognized that exceptions might exist. *In re Ernie Haire Ford*, 764 F.3d at 1327 n.4 (explaining that it was "not saying that an adversary defendant can *never* be a person aggrieved" (emphasis added)).

Here, Valley National (an adversary defendant) does not satisfy the "person aggrieved" standard for two reasons. First, Valley National suffers no pecuniary harm arising from the bankruptcy order itself. At most, the order tangentially increases its alleged harm of expeditiously settling with the Liquidating Trustee, but that is not a direct harm. Second, the purported interest Valley National seeks to vindicate—the ability to pursue a settlement with a party who is not limited by a funding agreement—is not protected by the Bankruptcy Code. Either one of these reasons alone renders Valley National not a "person aggrieved."

### 1. Valley National Suffers no Direct Harm.

First, the harm alleged by Valley National—an impaired "ability to settle claims

15

with the Liquidating Trustee" because of a litigation funding agreement, (Doc. 21 at 2)—is not directly caused by the bankruptcy court's order. As the Eleventh Circuit has held, an appellant is not aggrieved "when the only interest allegedly harmed . . . is the interest in avoiding liability from an adversary proceeding." *In re Ernie Haire Ford*, 764 F.3d at 1325–26. "[A]n order subjecting a party to litigation, or the risk thereof, causes only indirect harm to the asserted interest of avoiding liability," *id.* at 1326, and Valley National alleges only a risk that the litigation funding agreement *might* make settlement more difficult and result in liability, (Doc. 21 at 2) (describing the order as "an additional obstacle" to settlement).

While adversary defendants can be aggrieved parties in certain instances, Valley National is not a person aggrieved in this case because it does not have a property interest or similar right directly at stake in the bankruptcy court's order approving the funding agreement. For example, unlike in *Colony Lender, LLC v. Breakpointe, LLC*, No. 8:13-bk-348-KRM, 2017 WL 1023520, at *2 (M.D. Fla. 2017) (Merryday, J.), where the appellant contested the scope of assets that it acquired from the debtor, sold, and maintained a security interest in, Valley National is not at risk of losing a property right. Nor, like the *Colony Lender* appellant, is Valley National facing sanctions in the bankruptcy court depending on the outcome of the appeal. *Id.* Valley National must simply litigate against a plaintiff financed by a third party. As of now, Valley National faces no "immediate and pecuniary adversity" in the same way as if the bankruptcy court ordered sanctions or directed it to lose property. *Id.*

Valley National relies on the Eleventh Circuit's acknowledgment that an adversary defendant could be a person aggrieved if it asserted an interest provided by the Bankruptcy Code. *See In re Ernie Haire Ford*, 764 F.3d at 1327 n.4. For this proposition, the Eleventh Circuit relied on *In re Colony Hill Associates*, 111 F.3d 269, 273 (2d Cir. 1997), in which the Second Circuit allowed an unsuccessful auction bidder to challenge the bankruptcy court's approval of the winning bid because it argued that the ultimate purchaser was not a good faith purchaser due to intrinsic unfairness in the proceedings. *See In re Ernie Haire Ford*, 764 F.3d at 1327 n.4. In contrast to the instant situation, the appellant in *Colony Hill* was directly impacted by the bankruptcy proceeding because it was excluded entirely from the competitive auction process, despite being the highest bidder, which constitutes a substantial pecuniary harm. *See* 111 F.3d at 273. Further the Eleventh Circuit later described that citation as a "mere[ ] reference[ ]" and confirmed that an appellant is *not* aggrieved "simply by virtue of attacking the inherent fairness of a bankruptcy proceeding." *In re Bay Circle Props.*, 955 F.3d at 879–80. Instead, like the traditional test requires, "a party must both show a direct harm *and* hold an interest within the scope of the Bankruptcy Code." *Id.* at 880.

For further support that this test remains current, the Fifth Circuit recently held in an analogous case that an order approving a trustee's request for a special counsel "does not directly affect" the appellant because it does not directly change how the matter would ultimately be resolved. *Matter of Technicool Sys., Inc.*, 896 F.3d 382, 386 (5th Cir. 2018). Likewise, the fact that the Liquidating Trustee uses a litigation funding

17

agreement does not *directly* determine whether Valley National will settle or be held liable. *Cf. In re Colony Hill Assocs.*, 111 F.3d at 273 (noting that persons are not aggrieved when the "only pecuniary loss is . . . speculative"). Any negative pecuniary effect on Valley National as a result of the litigation funding agreement remains "several steps removed" from the challenged order and, therefore, is "not a 'direct' pecuniary impact." *Opportunity Fin., LLC v. Kelley*, 822 F.3d 451, 458 (8th Cir. 2016).

### 2. Valley National's Asserted Interest Is Not Protected by the Bankruptcy Code.

Valley National further fails under the second prong of the person aggrieved doctrine. "[F]or a person to be aggrieved, the interest they seek to vindicate on appeal must be one that is protected or regulated by the Bankruptcy Code." *In re Ernie Haire Ford*, 764 F.3d at 1326. The interest asserted by Valley National is not protected by the Bankruptcy Code under Eleventh Circuit precedent.

Valley National asserts that it satisfies this part of the person aggrieved test because, although "the Code's primary interest is minimizing the injury to creditors," it also has an interest in "ensuring" that the Liquidating Trustee has the absolute authority to compromise and settle. Doc. 21 at 2. Per Valley Nation, the litigation funding agreement interferes with this latter interest. *Id. In re Ernie Haire Ford* addressed a similar situation where the appellant challenged an order that allowed litigation to proceed against him. 764 F.3d at 1327. The Eleventh Circuit held that he did not satisfy the person aggrieved test because "as an adversary defendant," he had no interest beyond

18

"avoiding liability," an interest "antithetical to the goals of bankruptcy." 764 F.3d at 1327. In the same way, an adversary defendant pursues a settlement to avoid liability and cannot put forward a valid interest in that capacity.

Importantly, Valley National can point to no specific provisions in the Bankruptcy Code creating the right to settle and the right to negotiate with a conflict-free trustee. When a party can identify specific statutory rights that it may lose as a result of a final order, it is more likely to be a person aggrieved. *Compare Opportunity Finance*, 822 F.3d at 463 (Bye, J., dissenting) ("While it is true that the Code's primary interest is minimizing the injury to creditors, this is not its singular interest. The Code is also interested in protecting subsequent transferees from having their transactions avoided if they acted in good faith, *see* 11 U.S.C. § 550(b)(1), and in protecting parties from having their transactions avoided when the trustee is not acting for the benefit of a creditor, *see* 11 U.S.C. § 544."), *with* Doc. 21 at 2–3 (arguing that the right to settle is implicit in the Liquidating Trustee having sole discretion). But the interests asserted by Valley National are not found within the Bankruptcy Code. An interest like the one Valley National asserts might belong to creditors or the estate, but not to a party seeking to avoid financial obligation to the estate. *See In re LTV Steel Co.*, 560 F.3d 449, 454 (6th Cir. 2009) (noting that an interest in avoiding liability to the estate is "diametrically opposed to the primary goal of . . . the Bankruptcy Code," namely minimizing the injury to creditors (quotation omitted)).

## III. CONCLUSION

Appellant has not established either Article III standing to bring this appeal or the "person aggrieved" standing to appeal under the Bankruptcy Code. Accordingly, the appeal is **DISMISSED**. The Clerk is directed to terminate all pending motions and close the case.

**ORDERED** in Tampa, Florida, on April 23, 2021.

_____
Kathryn Kimball Mizelle
United States District Judge